**PARKER v. GULF REFINING CO.**
(two cases).

Nos. 6847, 6848.

Circuit Court of Appeals, Sixth Circuit.

Jan. 7, 1936.

A. M. Van Duzer, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and Lurie, Sachs & Miller, all of Cleveland, Ohio, on the brief), for appellants.

H. M. Roberts, of Cleveland, Ohio (Howell, Roberts & Duncan, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants, husband and wife, severally sued the manufacturer of Gulfwax, a paraffin product, for injuries growing out of burns received by the wife in its use. They complain of a verdict directed against them below, where the suits were consolidated for trial. The Gulfwax having been purchased from a retail dealer, and there being no question of negligent manufacture, the controlling question is whether it is an inherently dangerous product for the use contemplated so as to require upon its container some warning respecting its hazards.

The accident out of which the causes of action arose occurred on July 6, 1932. Mrs. Parker, while engaged in preserving jam at her home in Lakewood, Ohio, required paraffin to seal its containers. She had frequently used paraffin for such purpose, but not the defendant's product. On this occasion she went to one of the retail stores of the Atlantic & Pacific Tea Company and was sold a package of Gulfwax, containing four quarter pound rectangular cakes. The carton containing them had upon it a printed instruction reading: "Pour a quarter inch or more of Gulfwax (first melting it)." Returning to her home Mrs. Parker put one of the rectangular cakes into a small aluminum pan, previously used for the same purpose, and placed the pan over an open burner at the back of her gas stove. She then proceeded to her front porch, where she stayed "two or three minutes, long enough for the wax to melt." When she approached the kitchen on her return, she saw a reflection upon its back wall. Upon reaching the room she saw a white shaft extending from the pan half way to the ceiling. Hurrying to the stove to turn off the gas, there transpired what she describes as follows: "When I had my hand touching the valve or handle there was just like a puff that took place, and I had the impression that it—that the white light leaped out at me and I was immediately in flames, and that is all."

A chemical expert for the plaintiffs described the manufacture of paraffin and explained its properties. It is a residue remaining in crude oil after naptha, gasoline, and then kerosene are drawn off by a process of distillation. The paraffin itself contains no gasoline or kerosene, or anything of that kind, outside of perhaps a slight trace of moisture. It is a pure crystallization of paraffin wax. Being a pe-

troleum hydro-carbon, it will burn just like lard will burn, or bacon fat. It melts at approximately 126.6 degrees Fahrenheit. If its temperature is increased to 450 degrees, vapors will form, which may take fire either from applied heat or by coming into direct contact with flame. The flame point is 500 degrees Fahrenheit. Any inflammable material which reaches a certain temperature, either by direct contact with flame or by high temperature and oxidation, will, at the point of bursting into flame, produce a slight puffing. The expert also described a phenomenon referred to as "bumping." This occurs when liquids are superheated in such manner that the portion in closest contact with the fire forms a gas pocket. It is the tendency of the gas to expand and escape, with the result that some of the liquid is thrown from the container. It was the expert's opinion that Mrs. Parker was injured as the result of "bumping." Bumping may, however, occur in the heating of petroleum oil, lard, bacon fat, or any of the cooking oils commonly used in the kitchen, such as Mazola or Wesson Oil, and occurs even with water.

About two months after the accident, during which period the kitchen was not used, a witness found a large spot of wax upon the kitchen floor, surrounded by some smaller spots. There was no paraffin, however, upon the stove nor on the floor immediately surrounding the stove, and no proof that there was any upon Mrs. Parker's clothing. Immediately after the accident, Mr. Parker had taken the burning pan and dumped it under the water in the kitchen sink. It also appears from the evidence that Gulfwax is substantially the same product as is made by all of the large refineries under other trade-names, eight or ten of the big refiners having produced the same article for household use for many years. It is a fair inference that many millions of cakes of paraffin had been sold throughout the country for this purpose.

One theory of the plaintiffs is that there was an explosion. There is no evidence to support it. Paraffin contains no explosive gases, and the slight puffing observed was fully explained in the testimony of the expert. There was no explosion, as that term is commonly understood. It is the plaintiffs' alternative theory, based upon the expert's opinion, that the injuries resulted from bumping. This is, perhaps, among the probabilities. Other probabilities are that the paraffin vapors took fire because heated to the flaming point, or that the vapors being heavier than air, descended to the open gas flame and were there ignited.

To submit to a jury a choice of probabilities is but to permit them to conjecture or guess, and where the evidence presents no more than such choice, it is not substantial. This has been repeatedly pointed out by this court. Davlin v. Henry Ford & Son (C.C.A.) 20 F.(2d) 317; Louisville, etc., R. Co. v. Bell (C.C.A.) 206 F. 395; Toledo, etc., Ry. Co. v. Howe (C.C.A.) 191 F. 776, 782; Virginia & S. W. R. Co. v. Hawk (C.C.A.) 160 F. 348, 352. The opinion of the expert that the accident occurred as the result of bumping is supported by nothing more than that bumping does frequently occur with most liquids when they are superheated, and the circumstance that wax was found two months after the accident at a spot upon the kitchen floor remote from the stove. To connect the latter with the accident, there must first arise a reasonable inference that the wax was thrown from the pan at the time it occurred. This superposing of inferences does not constitute substantial evidence. Pennsylvania R. Co. v. Chamberlain, Adm'x, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

In any event the plaintiffs have failed to substantially support their claim that paraffin is inherently and imminently dangerous for the use to which it was put. The instructions upon the carton were that it was to be melted, and not superheated to the point of flame. We are in accord with the District Judge in concluding that under all of the circumstances, and in view of the scientific explanation of the attributes of the product, that Mrs. Parker's explanation of the accident and her estimate of the time interval were erroneous, and did not constitute substantial evidence. We are sustained in this view by the fact, undisputed in the record, that many household products in common use in the kitchen to which no inherently dangerous properties are commonly attributed might have brought about the same result if used in an unreasonable rather than a reasonable manner. While a dangerous characteristic in any product may sometimes remain unnoticed until accident discloses it, yet it is not without importance that millions of cakes of paraffin have been used throughout the country for many years for the very purpose here disclosed, yet diligent search of counsel fails to discover a single holding which declares it dangerous, or

even a case wherein its inherently dangerous character is asserted. This apparent absence of tragic result in widespread human experience must guide where authority is silent. It was not error to grant the defendant's motion for peremptory instruction at the close of the plaintiffs' case.

[3, 4] Nor was it error to exclude proffered evidence of a method for sealing jars with paraffin by which all danger of its burning may be avoided. This ruling reaches substantially the same issue as that upon the motion for directed verdict. To entitle the plaintiffs to the benefit of such evidence, there must have been substantial evidence of the inherently dangerous character of paraffin. In any event, its exclusion, if erroneous, was not prejudicial unless its admission would have required a different result, and we think it would not. Moss v. Ætna Life Insurance Co., 73 F.(2d) 339 (C.C.A.6).

The judgment below is affirmed.