**LOVAS**

v.

**GENERAL MOTORS CORP.**

No. 11931.

United States Court of Appeals
Sixth Circuit.

June 3, 1954.

C. Richard Grieser, Columbus, Ohio,
William A. Finn, Toledo, Ohio, Alex S.
Dombey, C. Richard Grieser, Herbert &
Dombey, Columbus, Ohio, William A.
Finn, Toledo, Ohio, on brief, for appellant.

Ernest C. Schatz, Toledo, Ohio, Milo J.
Warner, Ernest C. Schatz, Doyle, Lewis
& Warner, Toledo, Ohio, on brief, for
appellee.

Before McALLISTER and MILLER,
Circuit Judges, and FORD, District
Judge.

MILLER, Circuit Judge.

The appellant, in her capacity as Administratrix of the estate of her deceased husband, Nicholas Lovas, brought this action for damages by reason of the death of her husband in an automobile accident, which the complaint alleges was caused by the negligent construction and assembly by the appellee, General Motors Corporation, of the steering apparatus on a tractor driven by the decedent. At the close of all the evidence the District Judge directed a verdict for the appellee.

The tractor in question was sold on July 1, 1950 by a General Motors dealer to Harvey Harner, who in turn leased it to Mercury Motorways, Inc., which Company operated the tractor in its business, supplying the driver Nicholas Lovas, who had driven for the Company since 1937. On October 3, 1950, at about 5:45 a. m. Lovas was driving the tractor with trailer eastwardly on Central Avenue approaching the intersection with Secor Road near the City limits of Toledo, Ohio. It approached the intersection at a speed estimated at between 30 to 40 miles per hour. Its horn was being sounded and its manual spotlight was being flashed back and forth. When it was about 30 feet from the intersection, another truck entered the intersection traveling southwardly on the right side of Secor Road. A traffic light, located at the intersection, was changing from green to amber for eastbound traffic. The Mercury outfit, however, continued in a straight course into the intersection and crashed into the right rear side of the other truck. The driver Lovas was thrown from the cab, rendered unconscious, and thereafter died. The steering wheel of the Mercury truck was found lying close beside the driver. The nut which holds the steering wheel to the steering shaft was found in the hole of the hub of the steering wheel. At the time of the accident the odometer reading indicated 34,421 accumulated mileage. Between the date of its purchase and the date of the accident, the tractor had been given routine garage service, but no repairs had been made upon it.

Appellant's cause of action is based upon the contention that the negligent construction and assembly by the appellee of the steering apparatus on the Mercury truck caused the steering wheel to come off of the steering shaft of the Mercury truck, which caused the driver to lose control of the truck and to crash into the side of the other truck without changing its direction or speed. She claims that insufficient staking of the nut to the shaft caused the nut to work loose from the shaft and release the steering wheel. Appellee contends that the accident was the cause of the steering wheel coming off of the steering shaft and was not the result of it. It claims that due to the terrific impact of the left front corner of the Mercury tractor, forces were set in motion which were transmitted back through the various parts of the steering assembly causing a downward thrust of the steering shaft, which resulted in the steering nut being forced off the steering shaft along with the steering wheel.

The substantive law governing appellee's duty to a user of one of its trucks manufactured and sold by it, which is the basis of the liability asserted in this action, appears well settled at this time. In O'Donnell v. Geneva Metal Wheel Company, 6 Cir., 183 F.2d 733, 738, this Court referred to and approved the rule laid down in the case of Macpherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, using the following language: " * * * Judge Cardozo laid down the fundamental rule that if the nature of a finished product placed on the market by a manufacturer to be used without inspection by his customers is such that it is reasonably certain to place life and limb in peril if the product is negligently made, it is then a thing of danger; its nature gives warning of the consequences to be expected; and, if to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser and

used without new tests, then irrespective of contract, the manufacturer of the dangerous instrumentality is under a duty to make it carefully; and this principle is not limited to poisons, explosives, and things of like nature which, in their normal operation, are implements of destruction. The rule thus announced is followed by this court and the majority of federal and state courts." In that case, the District Court had directed a verdict for the defendant manufacturer, which ruling was reversed on the ground that there was sufficient evidence from which reasonable inference could be drawn that the automobile wheel involved in that case, the collapse of which caused the accident, was defective by reason of negligent manufacture, and that the question of such negligence was accordingly one for the jury. Similar rulings by this Court under similar situations were made in Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310, and Hupp Motor Car Corp. v. Wadsworth, 6 Cir., 113 F.2d 827. Appellant, relying upon these cases, particularly Hupp Motor Car Corp. v. Wadsworth, supra, contends that the evidence on her behalf was sufficient to take the case to the jury and that the District Judge was in error in directing a verdict for the appellee.

■■■ Whether the evidence on behalf of a plaintiff is sufficient to take the case to the jury is a question of law for the trial judge. Where federal jurisdiction is based upon diversity of citizenship, as in the present case, the state law on the question is applicable. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284; O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 190 F.2d 59; Gutierrez v. Public Service Interstate Transp. Co., 2 Cir., 168 F.2d 678.

Certain principles are well settled under both state and federal law. In every case, before the evidence is left to the jury, there is a preliminary question for the judge whether there is any substantial evidence upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is imposed. A mere scintilla of evidence, or evidence of no probative value, is not enough to require the submission of an issue to the jury. Where the evidence is conflicting or contradictory, the court does not attempt to judge its weight or to judge the credibility of the witnesses giving such testimony. In considering a motion by the defendant for a directed verdict the Court assumes the truth of the evidence in support of the facts essential to the plaintiff's claim together with all the inferences that justifiably could be drawn therefrom. Where such evidence on an issue is so overwhelmingly against the plaintiff's contention as to leave no room to doubt that a fact is not what the plaintiff claims it to be and such fact is essential to plaintiff's cause of action, the Court is authorized as a matter of law to direct a verdict for the defendant. But where uncertainty as to the facts arises from a conflict in the testimony, or because fair-minded men will honestly draw different conclusions from undisputed facts, the question is not one of law but of fact to be settled by the jury. Gunning v. Cooley, 281 U.S. 90, 92–94, 50 S.Ct. 231, 74 L.Ed. 720; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Hutchins v. Akron, Canton & Youngstown R. Co., 6 Cir., 162 F. 2d 189, 192. The Ohio law, which is applicable to this case, is settled to that effect. Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St. 469, 189 N.E. 246; Wilkeson, Adm'x v. Erskine & Son, Inc., 145 Ohio St. 218, 61 N.E.2d 201.

■■ In order to have her case submitted to the jury appellant had the burden of introducing evidence of probative value which would tend to show that the steering wheel came off the steering shaft because of the negligent construction or assembly of the wheel and shaft, and that the accident was caused by such a defect. With respect to the alleged negligent construction or assembly of the wheel and shaft, appellant's evidence

showed that the wheel was found off the shaft *after the accident* with the retaining nut in the hub of the wheel. She introduced into evidence the wheel, nut, steering assembly, and photographs of the scene of the accident, the truck, and various parts of it. Certain witnesses testified that the threads of the top of the shaft were not in a damaged condition after the accident, and that the threads on both the shaft and the nut were not prick punched after being put together so as to prevent the nut, which bolted the wheel to the shaft, from working loose over the period of time the truck had been in operation. But the nut, and photographic exhibits of the nut and shaft after the accident, introduced by the appellee, showed the requisite prick punches and a badly damaged condition of the threads on the shaft as would result from a forced removal of the nut from the shaft without unscrewing the nut. The testimony of a witness which is positively contradicted by the physical facts cannot be given probative value by the Court. Galloway v. United States, 9 Cir., 130 F.2d 467, 471, affirmed 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, rehearing denied 320 U.S. 214, 63 S.Ct. 1443, 87 L.Ed. 1851; United States v. McGill, 8 Cir., 56 F.2d 522, 524; United States v. Diehl, 4 Cir., 62 F.2d 343. The photographic exhibits also showed that the steering gear shaft had been pulled or forced down into the casing approximately three-fourths of an inch from its normal position. They also showed the broken end plate of the steering assembly resulting from the downward thrust of the steering shaft.

The continuous sounding of the horn and the flashing of lights as the truck neared the intersection might mean that the driver had lost control of the truck by reason of the steering wheel's becoming disengaged from the steering mechanism; but it also might mean that the truck could not be stopped because of worn-out or improperly adjusted brakes, not chargeable to the appellee; or it might have meant that the driver had assumed that he had the right of way before the traffic light began to change against him. But it would be a pure guess on the part of the jury which of the three alternatives could be inferred from the evidence.

Each case of this type is controlled by the particular facts involved. In our opinion, the evidence in Goullon v. Ford Motor Co., supra, Hupp Motor Car Corp. v. Wadsworth, supra, and O'Donnell v. Geneva Metal Wheel Co., supra, all from this Court, presented much stronger cases for the claimant than is shown by the evidence in this case. In this case, the physical exhibits, photographic evidence and testimony of the several witnesses who were skilled in the mechanical problems involved, justified the District Judge's conclusion that there was no substantial evidence of probative value to support the appellant's charge that the accident was due to any negligence on the part of the appellee and that a directed verdict was proper. Davlin v. Henry Ford & Son, 6 Cir., 20 F.2d 317; Landon v. Lee Motors, Inc., 161 Ohio St. 82, 118 N.E.2d 147. See: O'Hara v. General Motors Corp., D.C., 35 F.Supp. 319, E.D.Mich.; Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458.

We have also considered the rulings excluding certain evidence offered by appellant, which, in our opinion, do not constitute prejudicial error.

The judgment is affirmed.