986 F.2d 1412
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sarah CHALIFA; Abraham Chalifa, Plaintiffs-Appellants,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE, Defendant-Appellee.
 No. 92-1112.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: February 25, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CA-91-989-R)
 Argued: David Foxwell Albright, Jr., Horn & Bennett, P.A., Baltimore, Maryland, for Appellants.
 Burton Harry Levin, Assistant Solicitor, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before HAMILTON, Circuit Judge, SPROUSE, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Sarah and Abraham Chalifa appeal from a jury verdict in favor of the City of Baltimore and its mayor in a "slip and fall" case. The Chalifas challenge rulings of the trial court excluding three items of evidence. We conclude that all three contentions are without merit.
 
 
 2
 * During their April 1990 visit to Baltimore, the Chalifas entered the pedestrian footbridge connecting Piers 4 and 5 of the Inner Harbor. The City maintained the footbridge. The bridge was very crowded, and the Chalifas became separated. As Ms. Chalifa exited the Pier 5 side of the bridge, she encountered a change in elevation between the concrete ramp of the bridge and the asphalt pavement. She lost her balance and fell into a wooden post-sustaining a fractured dislocation of her left shoulder.
 
 
 3
 The Chalifas brought this diversity action in the District Court of Maryland. They claimed that their injuries and damages were caused by the unreasonably dangerous 4-inch drop-off at the Pier 5 side of the footbridge.[1] The jury returned a verdict in favor of the defendants, and the court denied the Chalifas' motion for a new trial.
 
 
 4
 At trial, the court excluded three items of evidence introduced by the Chalifas. First, it barred photographs and testimony showing the condition of the footbridge at the end opposite the accident site on the basis that this evidence was irrelevant, misleading, confusing, and prejudicial. Second, it excluded the construction drawings of the footbridge, showing that the City had intended the difference in elevation between the concrete ramp and the pavement to be no more than 3/4 of an inch, because it was cumulative evidence. Third, it ruled that expert testimony was unnecessary to determine whether photographs of the accident site depicted an unreasonably dangerous condition because this was not a subject requiring expert testimony.[2]
 
 II
 
 5
 In the first place, there is no merit to the Chalifas' contention that we should review the trial court's evidentiary rulings de novo. We will afford the district court's evidentiary rulings the substantial deference to which they are entitled, and we will affirm them unless the court abused its discretion. United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), cert. denied, No. 92-6632, 1992 WL 353662 (U.S. Jan. 11, 1993); United States v. Fernandez, 913 F.2d 148, 155 (4th Cir. 1990); Beaty Shopping Ctr., Inc. v. Monarch Ins. Co., 315 F.2d 467, 471 (4th Cir. 1963); see Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).
 
 
 6
 The Chalifas first complain of the district court's refusal to admit their proffered testimony and photographs of the side of the bridge opposite the accident site. They argue that this evidence would have shown a 1/8-inch drop-off from the bridge to the sidewalk, in contrast to admitted evidence, which showed a 4-inch drop-off at the accident site. They contend that the relatively level condition of the walkway where Ms. Chalifa entered the footbridge proves that the walkway at the accident site was unreasonably dangerous and disproves her contributory negligence.[3]
 
 
 7
 Federal Rule of Evidence 401 defines relevant evidence as evidence that "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even relevant evidence, of course, may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403; see Garraghty v. Jordon, 830 F.2d 1295, 1298 (4th Cir. 1987).
 
 
 8
 The district court admitted evidence and testimony regarding the 4inch drop-off at the area where Ms. Chalifa fell-obviously probative of a defect at the accident site. In contrast, the evidence at the other side of the bridge, where no accident occurred, did not tend to prove or disprove any fact concerning the accident site or any fact concerning the cause of Ms. Chalifa's fall. Since this evidence was not probative of an unreasonably dangerous condition at the accident site, in our view, the court acted within the bounds of its discretion in excluding this evidence as irrelevant under Rule 401. Alternatively, the court excluded the evidence under Rule 403. The evidence of the nonaccident side of the bridge could have misled the jury into confusing the two sites; therefore, this was also a proper discretionary ruling.
 
 
 9
 The same principles guide our review of the Chalifas' objection to the district court's exclusion of the City's construction drawings of the footbridge. The Chalifas contend that the drawings would have proved that the 4-inch drop-off was an unreasonably dangerous condition because the maximum elevation shown on the drawings was 3/4 of an inch. In excluding the drawings the court reasoned that: (1) the Chalifas did not have an expert to interpret the drawings, and (2) the photographs of the accident scene already showed a change in elevation over 3/4 of an inch.[4] The jurors heard evidence regarding the construction and maintenance of the footbridge and viewed photographs of the accident site illustrating the 4-inch drop-off. Additionally, the Chalifas' expert had testified that a 4-inch drop-off on a footbridge violated the national standards applicable to walkway surfaces.
 
 
 10
 It was perhaps a close call for the trial judge to decide that admission of the construction drawings was cumulative, but close calls on contested evidentiary matters are the grist of a trial court's mill, and we cannot say the court abused its discretion in this instance. Even if the drawings were not cumulative, the court could have found them misleading under Rule 403. At trial, the Chalifas asserted that they were not bringing a negligent design case nor did they produce evidence on this issue. Instead, their principal contention was that the footbridge, as constructed, created an unreasonably dangerous condition. Arguments about the drawings might well have confused the jury into believing that the Chalifas' case included a negligent design claim against the City.
 
 
 11
 The final ruling challenged by the Chalifas is the district court's exclusion of the testimony of their liability expert, Charles J. Goedken, who would have testified that a photograph of the 4-inch dropoff showed an unreasonably dangerous condition. They contend that the court erroneously excluded Goedken's testimony because it addressed the ultimate issue in the case.
 
 
 12
 Federal Rule of Evidence 704(a), of course, permits an expert to testify on the ultimate issue to be decided by the court. But Rule 704(a) does not automatically require the admission of every proffered expert opinion to prove the ultimate issue. The offered testimony is subject to the limits of Rule 702, which allows the admission of expert testimony only if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." See Persinger v. Norfolk & W. Ry., 920 F.2d 1185, 1188 (4th Cir. 1990). Evidence within the common knowledge of the jurors "almost by definition, can be of no assistance." Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986); see Persinger, 920 F.2d at 1188.
 
 
 13
 The district court reasoned that Goedken's opinion was unnecessary because the subject of his testimony was well within a juror's common knowledge.[5] We agree. It would be difficult to imagine any adult who has not been jarred by a sudden step down when walking on a sidewalk, road, or footbridge. Goedken did not possess any "scientific, technical, or other specialized knowledge" that would have elevated his opinion over this garden variety knowledge, which an average juror reasonably gains from everyday experience. There was sufficient evidence before it for the jury to visualize the drop-off and to understand the potential consequences for a user of the footbridge who came upon it suddenly. The potential danger was fairly obvious, and a jury should be competent to decide whether the defendant maintained the footbridge in an unreasonably dangerous condition. Salem v. United States Lines Co., 370 U.S. 31, 36 (1962). Goedken's testimony could not have assisted the trier of fact, as required by Rule 702. Consequently, the trial court did not abuse its discretion by disallowing the expert testimony.
 
 
 14
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Abraham Chalifa sued for loss of consortium
 
 
 [2]
 The court permitted the Chalifas' expert to testify on other matters
 
 
 [3]
 The Chalifas also contend that the photograph showed that repairs of an unspecified nature were underway at the nonaccident side of the bridge. Since the proffer of evidence did not explain the nature of the repairs, the court properly refused to consider that reason for admitting the photographs
 
 
 [4]
 After the court's ruling, the Chalifas produced an expert to testify regarding the drawings, but the court still barred the evidence as cumulative. It permitted the construction drawings to be used for identification purposes
 
 
 [5]
 The court, however, later allowed Goedken, a civil engineer with expertise in the construction of walkway surfaces, to testify on aspects of the walkway surface shown in the photographs and the maintenance standards for walkway drop-offs